## A08A0183. THE STATE v. PRESTON.
### (666 SE2d 417)

PHIPPS, Judge.

Kevin Preston was a driver in an automobile accident that involved a fatality. He was indicted on several charges, including driving under the influence, and he moved to suppress the results of a state-administered blood test. The trial court granted the motion. We find this ruling was in error and reverse.

Under the implied consent statute,[1] a person operating a motor vehicle is deemed to have consented to a chemical test for the presence of alcohol or drugs if he or she has been involved in a traffic accident involving a serious injury or fatality, and if the investigating officer has probable cause to believe that the person was driving under the influence.[2] The test must be administered at the request of a law enforcement officer "having reasonable grounds to believe that the person has been driving or was in actual physical control of a moving motor vehicle . . . in violation of Code Section 40-6-391."[3] Absent probable cause, the administration of the test violates constitutional prohibitions against unreasonable searches and seizures.[4]

Undisputed evidence adduced at the hearing on the motion to suppress showed the following facts. The accident occurred on July 23, 2004, when Preston turned left at an intersection, striking another vehicle. During the accident, Preston's airbag deployed. Preston told the investigating officer that he had consumed "a few beers," and the officer observed that Preston had bloodshot eyes and emitted an odor of alcohol. Preston's speech and movement were normal. He exhibited no clues of impairment on the one-leg stand and walk and turn field sobriety tests. However, on the horizontal gaze nystagmus (HGN) field sobriety test, Preston exhibited four clues of impairment out of a possible six. Preston also tested positive

---

[1] OCGA § 40-5-55.

[2] OCGA § 40-5-55 (a); *Hough v. State*, 279 Ga. 711, 712 (620 SE2d 380) (2005); see generally *Cooper v. State*, 277 Ga. 282, 290-291 (V) (587 SE2d 605) (2003) (discussing constitutional implications of Georgia's implied consent statute).

[3] OCGA § 40-5-55 (a).

[4] See *Cooper*, supra at 291.

for alcohol on an alco-sensor device. The investigating officer decided to obtain a blood test from Preston, and another officer read Preston the implied consent notice and took him to a hospital for the test. Preston was not arrested at the accident scene or the hospital. In the course of investigating the accident, the investigating officer obtained witness statements indicating that the other driver may have run a red light at the intersection where the accident occurred. Ultimately, however, the officer determined that the accident was caused by Preston's failure to yield. Four months after the accident, the investigating officer obtained a warrant for Preston's arrest.

At the suppression hearing, the investigating officer first testified that Preston's physical condition, field sobriety test performance, admission of drinking alcohol and positive alco-sensor result demonstrated to him that Preston "was under the influence of alcohol and with the driver being involved in a possible fatality accident [he had] probable cause to go further with it," meaning to read the implied consent notice and ask for a blood test. But later in his testimony, the officer affirmatively answered defense counsel's question that he "had no reason to arrest [Preston] for driving under the influence" and testified that had the accident been less serious he would not have asked Preston to take a blood test.

The trial court ruled to suppress the test results, stating:

> The State's witness acknowledged that he did not arrest the Defendant for DUI, and that he did not have probable cause to arrest the Defendant for DUI or to seek a blood/urine test, except for the fact that the Defendant was involved in a traffic accident resulting in a fatality. Since the law requires the officer to have reasonable grounds to believe that the Defendant was driving in violation of Code Section 40-6-391 (driving under the influence) before requesting the blood/urine test, it was improper for the officer to request the administration of the test(s) in this case.

In *State v. Underwood*,[5] the Supreme Court of Georgia recently reiterated the standard we must use in reviewing a ruling on a motion to suppress:

> [W]here the facts relevant to a suppression motion are undisputed, the proper standard of review on appeal is de novo, not clearly erroneous. . . . "While the trial court's findings as to disputed facts in a ruling on a motion to

---

[5] 283 Ga. 498, 500 (661 SE2d 529) (2008).

suppress will be reviewed to determine whether the ruling was clearly erroneous, where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review."[6]

The investigating officer testified that Preston admitting having consumed alcohol, emitted an odor of alcohol, had bloodshot eyes, tested positive for alcohol on the alco-sensor, and exhibited four of six clues of impairment on the HGN field sobriety test. No evidence at the hearing contradicted any of these facts.[7] Moreover, the trial court neither made any specific findings about the officer's credibility nor rejected the officer's testimony as to any of these facts.[8] Accordingly, we must apply the law to these facts de novo.

"The test of probable cause requires merely a probability — less than a certainty but more than a mere suspicion or possibility."[9] We have held that a driver's admission to drinking alcohol, odor of alcohol, and positive alco-sensor test do not, as a matter of law, demonstrate probable cause that the driver was under the influence.[10] But here the undisputed evidence also showed that Preston exhibited four of six clues of impairment on the HGN test, which constitutes evidence of impairment under law enforcement guidelines.[11] "Field sobriety tests are not designed to detect the mere presence of alcohol in a person's system, but to produce information on the question whether alcohol is present at an impairing level. . . ."[12] Preston's performance on the HGN test, along with his

---

[6] Id., quoting *Vansant v. State*, 264 Ga. 319, 320 (443 SE2d 474) (1994) (footnotes omitted).

[7] Preston argues in his brief on appeal that the officer "testified that Preston's bloodshot eyes were consistent with an accident where the airbags deployed, and could not state the bloodshot eyes were caused by alcohol as opposed to the airbag exploding in Preston's face at the time of impact." The record does not contain such testimony. Rather, the officer's only testimony regarding an airbag was his agreement that Preston's airbag had deployed; he was not asked if he thought Preston's bloodshot eyes were caused by a deployed airbag.

[8] See *State v. Sledge*, 264 Ga. App. 612, 614 & n. 4 (591 SE2d 479) (2003) (noting, in reversing grant of motion to suppress, that trial court did not suggest officer lacked credibility but acknowledging that, had court resolved credibility issues against officer, outcome of appeal likely would have been different). Compare *State v. Ellison*, 271 Ga. App. 898, 904 (6) (611 SE2d 129) (2005) (trial court rejected officer's testimony regarding cause of driver's bloodshot eyes); *State v. Batty*, 259 Ga. App. 431, 432 (577 SE2d 98) (2003) (trial court "explicitly found [officer's] credibility to be lacking").

[9] *Frederick v. State*, 270 Ga. App. 397, 398 (606 SE2d 615) (2004) (citation omitted).

[10] See *Batty*, supra at 431-432.

[11] See *State v. Tousley*, 271 Ga. App. 874, 880 (1) (b) (ii) (611 SE2d 139) (2005). While the officer testified that he was not sure of the number of clues needed to "pass" or "fail" the HGN test, his testimony that Preston exhibited four clues is uncontroverted.

[12] *Sieveking v. State*, 220 Ga. App. 218, 219 (1) (469 SE2d 235) (1996) (citations omitted).

admission of drinking, odor of alcohol, alco-sensor result, and bloodshot eyes gave the officer probable cause upon which to request a blood test under the implied consent statute.

The fact that the officer did not believe he had probable cause to request the blood test does not require a different finding on whether the circumstances in fact gave rise to probable cause to support the request. The scope of a person's fourth amendment rights, including the protection against unreasonable searches and seizures, is determined objectively, not by the subjective conclusions of a law enforcement officer.[13] Here, an objective assessment of the undisputed facts concerning Preston's condition demonstrated probable cause that he was driving under the influence, which satisfied the requirements of the implied consent statute.

*Judgment reversed. Barnes, C. J., and Johnson, P. J., concur.*

### ON MOTION FOR RECONSIDERATION.

Preston argues that we should not have used a de novo standard of review, pointing to commentary by the trial court during the hearing on the motion to suppress that he contends shows the court questioned the investigating officer's credibility. He further argues that, even under a de novo review, the evidence did not demonstrate probable cause to authorize the blood test.

The court criticized aspects of the officer's investigation, such as: (a) his failure to note (and later to recall) the way in which Preston deviated from instructions when he otherwise successfully performed another field sobriety test; (b) the officer's inability to recall the number of clues that constitutes a failure on the HGN field sobriety test; (c) the officer's determination that Preston was at fault in the accident; and (d) the officer's mistaken belief that a fatal accident authorized a state-administered blood test. In addition, the court remarked that the investigating officer and another officer had not treated Preston as having been a less safe driver because they allowed him to leave the hospital after the blood test. Finally, the court stated that the HGN test results were "not too compelling" in light of evidence that Preston's airbag had deployed.

The trial court was entitled to reject all or part of the officer's testimony, and we will not usurp the court's authority to make such credibility determinations.[14] But we do not view the trial court's commentary at the suppression hearing as rejecting the officer's

---

[13] *Autry v. State*, 277 Ga. App. 305, 308 (626 SE2d 528) (2006); see also *Stadnisky v. State*, 285 Ga. App. 33, 37 (2) (645 SE2d 545) (2007) ("The validity of the seizure depends not on the officer's actual state of mind but on an objective assessment of his actions in light of all the facts and circumstances confronting him at the time.") (punctuation and footnote omitted).

[14] See *State v. Lanes*, 287 Ga. App. 311, 312 (651 SE2d 456) (2007).

unambiguous and undisputed testimony that Preston admitted he had consumed alcoholic beverages, emitted an odor of alcohol, tested positive on an alco-sensor, and displayed four out of six clues of impairment on the HGN field sobriety test.[15] Accordingly, our review of this evidence under a de novo standard was proper and under such review this evidence demonstrated sufficient probable cause to authorize the blood test, for the reasons set forth above. We deny Preston's motion for reconsideration.

*Motion for reconsideration denied.*

DECIDED JULY 11, 2008 —
RECONSIDERATION DENIED JULY 30, 2008 — 

*Paul L. Howard, Jr., District Attorney, Stephany J. Luttrell, Assistant District Attorney*, for appellant.

*Sherry Boston*, for appellee.

---

[15] But see *State v. Brown*, 278 Ga. App. 457, 459-461 (629 SE2d 123) (2006) (de novo standard not appropriate where officer's testimony was impeached and where trial court found officer's testimony was not credible on dispositive issue).